**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **J.R.-1, C.R., M.R., and J.R.-2**

**No. 16-0609** (Jackson County 15-JA-123, 15-JA-125, 15-JA-128, & 15-JA-129)

**MEMORANDUM DECISION**

Petitioner Father J.R.-3, by counsel Ryanne A. Ball, appeals the Circuit Court of Jackson County's May 18, 2016, order terminating his parental rights to thirteen-year-old J.R.-1, eleven-year-old C.R., five-year-old M.R., and one-year-old J.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order and a supplemental appendix. The guardian ad litem for the children ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in (1) denying him a post-adjudicatory improvement period, and (2) terminating his parental rights to the children against the DHHR's recommendation and without granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, the DHHR filed an abuse and neglect petition against petitioner and others related to the abuse and neglect of seven children, including petitioner's four biological children, J.R.-1, M.R., C.R., and J.R.-2.[2] In that petition, the DHHR alleged that petitioner was severely abusive to the children and their mother; committed domestic violence in the children's

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, as two of the children and petitioner share the same initials, we refer to them where necessary in this memorandum decision as J.R.-1 and J.R.-2 (the two children) and J.R.-3 (petitioner).

[2]Petitioner appeals the circuit court's termination order only as it relates to his four biological children, not the remaining three children involved in this case below. As petitioner was not the biological father of the remaining three children and raises no assignments of error with regard to them, this memorandum decision relates only to his four biological children, J.R.-1, C.R., M.R., and J.R.-2.

1

presence; and used controlled substances in the family home, which affected his parenting. Petitioner waived his right to a preliminary hearing, and the circuit court denied his motion for supervised visits with the children due to the allegations of physical and emotional abuse.

In December of 2015 and January of 2016, the circuit court held two adjudicatory hearings and a separate proceeding to take in camera testimony from the children. The DHHR presented evidence that petitioner was violent towards the children and the mother of J.R.-1 and M.R.; threatened to kill them and bury them in the backyard; specifically threatened to kill the one-year-old child, J.R.-2, by suffocating him and then placed his hand over that child's mouth three separate times; specifically threatened to kill the mother of J.R.-1 and M.R. by slitting her throat and throwing her body in the river; stated that he was not afraid to go to jail and would get away with killing them because he was "crazy"; regularly called the children vulgar names; was arrested for violating a protective order; physically "slammed" another child in the home, O.K., against a wall, grabbed her by the throat, and hit her head against a door multiple times; and smoked marijuana daily.

In their in camera testimony, the children confirmed the DHHR's evidence of petitioner's violent and abusive behaviors in the home. At least two of the children also testified that petitioner made them do chores when he supervised them, including cooking their own food. One child testified that petitioner would whip the children with a board and that it made her feel scared. In his defense, petitioner testified and denied many of the allegations against him. Based on the evidence presented, the circuit court found that petitioner had abused and neglected the children. The circuit court ruled that the DHHR's evidence corroborated the children's testimony, and that petitioner's testimony was incredible and "self-serving." In anticipation of petitioner's motion for a post-adjudicatory improvement period, the circuit court directed the multidisciplinary team ("MDT") to discuss whether petitioner should receive an improvement period during the formation of the family case plan.

In February of 2016, petitioner filed a motion for a post-adjudicatory improvement period. At a hearing held that same month, the circuit court continued the dispositional phase of the proceedings. While the relevant transcripts were not included in the record before this Court, it appears that the circuit court heard evidence and argument on petitioner's motion for a post-adjudicatory improvement period at hearings held in February and March of 2016. Petitioner maintains that he testified in support of his motion that he was willing to cooperate with the terms of an improvement period. By order entered in March of 2016, the circuit court denied petitioner's motion for a post-adjudicatory improvement period.

During the proceedings below, Dr. Timothy Saar, a licensed psychologist, performed a psychological evaluation on petitioner and submitted a report regarding his psychological state and fitness to parent. In that report, Dr. Saar found that petitioner showed a "monumental effort . . . to provide justifications, minimization, and false information . . . to craft responses that would present him in a positive light." Dr. Saar further found that petitioner denied wrongdoing and while he "claims he has changed . . . there is no credible evidence this is so. Consequently, it can reasonably be expected that his present and future behavior will mirror his past behavior." Dr. Saar noted that petitioner "claims he has no reason to change and sees no reason for

2

improvement or services." Dr. Saar's prognosis for petitioner's ability to improve his parenting was "extremely poor to non-existent."

In April of 2016, petitioner filed a motion for reconsideration of the circuit court's denial of his motion for a post-adjudicatory improvement period. The same day, the guardian filed a motion to terminate petitioner's parental rights to the children. At the final disposition held later that month, the circuit court heard testimony on those motions. Noting the children's love for petitioner, the DHHR worker recommended that the circuit court grant petitioner an improvement period. The guardian opposed granting petitioner an improvement period and again moved for termination of his parental rights.

By order entered on May 18, 2016, citing Dr. Saar's report in addition to other evidence, the circuit court denied petitioner's motion for reconsideration and terminated his parental and custodial rights to the children. In that order, the circuit court found that petitioner continued to deny any abuse or neglect; was not likely to follow through with an improvement period; and presented no likelihood that the conditions of abuse and neglect would change. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying him a post-adjudicatory improvement period. Pursuant to West Virginia Code § 49-4-610, "[a] court may grant a respondent an improvement period . . . when the respondent files a written motion . . . and demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" Further, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable

and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The decision to grant or deny a parent's motion for an improvement period in an abuse and neglect proceeding is a discretionary decision left to the sound judgment of the circuit court. See Syl. Pt. 2, in part, *In re Lacey P.*, 189 W.Va. 580, 433 S.E.2d 518 (1993) (stating that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").

In support of his argument, petitioner states that he (1) filed a written motion for an improvement period and (2) demonstrated his likelihood to comply with the terms of an improvement period through his testimony as to his willingness to cooperate with services imposed upon him. However, petitioner fails to discuss his unwillingness to acknowledge the abuse and neglect problems that required improvement. Indeed, petitioner's argument wholly ignores his continued denial of wrongdoing and his prior claims that he did not require any further "change" or "improvements or services." Based upon the evidence presented to the circuit court, particularly petitioner's failure to acknowledge the abuse and neglect problems at issue, we find no error in the circuit court's denial of petitioner's motion for an improvement period in this case.

Petitioner's second ground for appeal is that the circuit court erred in terminating his parental and custodial rights to the children against the DHHR's recommendation and without granting him an improvement period. We have held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Further, West Virginia Code § 49-4-604(c) provides that "no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected" exists when

> (2) [t]he abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control;
>
> . . . .
>
> (5) The abusing parent or parents have repeatedly or seriously injured the child physically or emotionally . . . and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child;

In this case, the evidence clearly established and the circuit court found that petitioner was unwilling to improve his parenting and achieve reunification with his children, given his statements that he did not require any "change" or "improvements or services." To the extent petitioner argues that he was compliant with services prior to the final dispositional hearing in

4

this matter, he fails to cite to the record to support that factual assertion and conclusion. Further, while petitioner claims that he also testified that he was willing to cooperate with services to reunify with his children, the circuit court is the entity that determines the weight and credibility of evidence in abuse and neglect proceedings. In this case, the circuit court found petitioner's statements as reflected in Dr. Saar's report to be more credible and to demand more weight than his testimony and the recommendations of the DHHR.

Moreover, petitioner repeatedly and seriously injured the children (both physically and emotionally) and the potential for him to do so in the future was great. As noted by Dr. Saar in his assessment of petitioner, "it can reasonably be expected that his present and future behavior will mirror his past behavior." Because the evidence established that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected, the circuit court was not required to employ the less-restrictive dispositional alternative of an improvement period before terminating petitioner's parental and custodial rights to the children.

Given the circumstances of this case, we also find no merit to petitioner's argument that the circuit court was prohibited from terminating his parental and custodial rights given the DHHR's recommendation. In his testimony at the dispositional hearing, the DHHR worker noted that the children loved petitioner, and the DHHR worker recommended that petitioner receive an improvement period. Contrary to the DHHR worker, the guardian recommended that termination was in the children's best interests. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights when the evidence shows that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination was necessary for the children's welfare. Based on the evidence of petitioner's behavior and failure to remedy his behavior in the near future, we find that the circuit court did not abuse its discretion in proceeding to termination. The evidence of emotional and physical harm coupled with petitioner's continued refusal to acknowledge a problem and remedy the same support termination.

Therefore, we find no error in the decision of the circuit court, and its May 18, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II